

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2003

# USA v. D'Amario

Precedential or Non-Precedential: Precedential

Docket No. 02-2371

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. D'Amario" (2003). *2003 Decisions.* Paper 76.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/76

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 20, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 02-2371 & 02-3250

UNITED STATES OF AMERICA,

Appellant

v.

ARTHUR D'AMARIO

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 01-cr-00346)
District Judge: Hon. Joseph E. Irenas

Argued: June 2, 2003

Before: ALITO, ROTH, and STAPLETON, *Circuit Judges*

(Opinion Filed: November 20, 2003)

CHRISTOPHER J. CHRISTIE
United States Attorney
GEORGE S. LEONE
Chief, Appeals Division
DEBORAH L. GOLDKLANG (Argued)
970 Broad Street, Room 700
Newark, New Jersey 07102-2535

*Counsel for Appellant*

LORI M. KOCH (Argued)
Assistant Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, New Jersey 08102

*Counsel for Appellee*

---

## OPINION OF THE COURT

---

ALITO, *Circuit Judge*:

This appeal requires us to review a downward departure from the sentence prescribed by the United States Sentencing Guidelines.[1] The defendant, Arthur D'Amario, was convicted of violating 18 U.S.C. § 115(a)(1)(B) by threatening to kill a federal judge with the intent to impede, intimidate, and interfere with the judge while engaged in the performance of official duties, and with intent to retaliate against the judge on account of the performance of official duties. The defendant committed this crime while serving a prison term on a federal conviction for possession of a firearm by a convicted felon. The defendant was apparently motivated to write the threatening letter by frustration regarding the way in which time that he spent in custody after arrest was taken into account in determining the amount of time that he was required to serve on the federal felon-in-possession conviction and a related state sentence. The District Court's downward departure appears to have been designed in large part to rectify this determination. We reverse and remand for resentencing within the Guidelines range.

I.

In early February 1999, law enforcement officers in Rhode Island executed a search warrant for D'Amario's residence and found a handgun and ammunition. At that time, D'Amario was on probation for a prior state felony

---

1. The District Court applied the 1998 version of the Guidelines. Neither party challenges this decision, and all of our citations are to that version as well.

conviction. Rhode Island state authorities arrested D'Amario for violating the terms of his state probation, and he was assigned to a state correctional facility pending disposition of the state probation violation charge.

On March 3, 1999, D'Amario was indicted by a federal grand jury in the District of Rhode Island for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Because all of the district judges in the District of Rhode Island were recused, D'Amario's federal case was assigned to Judge Joseph A. DiClerico, Jr., of the District of New Hampshire, who sat by designation in the District of Rhode Island. On March 5, D'Amario was transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum but was returned to state custody on September 15. On December 20, 1999, he was again transferred to federal custody, this time for trial. A jury found D'Amario guilty on the felon-in-possession charge, and on March 10, 2000, Judge DiClerico sentenced him to 18 months' imprisonment. Judge DiClerico recommended that the Bureau of Prisons ("BOP") give D'Amario credit for the period that he had spent in custody since his federal indictment. In so doing, however, Judge DiClerico recognized that the BOP was not required to accept his recommendation. *See* App. at 782.

Following the federal sentencing, D'Amario was returned to the state for the probation violation hearing, and on March 13, 2000, Judge Clifton of the Rhode Island Superior Court sentenced D'Amario to a term of 386 days' imprisonment and entered a judgment for "time served," crediting D'Amario for the time that he had spent in custody from February 22, 1999, to the date of the judgment. App. at 755, 775. D'Amario was then released to federal custody to serve his federal sentence and was sent to the Federal Correctional Institution at Ft. Dix, New Jersey. Because almost all of the time that D'Amario had spent in custody following his arrest had already been credited against his state sentence, the BOP declined under 18 U.S.C. § 3585(b)[2] to credit any of that time against his

---

2. 18 U.S.C. § 3585(b) provides:

federal felon-in-possession sentence. Under that provision, time spent in custody before sentencing may be credited against a sentence if, among other things, that time "has not been credited against another sentence." *Id.*

Although D'Amario could have challenged the BOP's decision in administrative proceedings, he did not do so but instead filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the District of Rhode Island. On June 5, 2000, Judge DiClerico dismissed the petition without prejudice to re-filing in the District of New Jersey after exhaustion of administrative remedies.[3] In an appeal, the United States Court of Appeals for the First Circuit affirmed D'Amario's conviction and sentence and held that he could not contest the BOP's decision concerning his sentence until he had exhausted administrative remedies. *United States v. D'Amario*, 2 Fed. Appx. 25, 2001 WL 120055, 2001 U.S. App. LEXIS 16669 at *29 (1st Cir. Feb. 12, 2001).

D'Amario then mailed a letter dated June 22, 2000, from Ft. Dix to Ed Roy, Esq., his attorney in the state and federal cases in Rhode Island. The letter stated in pertinent part:

---

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

    (1)  as a result of the offense for which the sentence was imposed; or

    (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

3. D'Amario also appears to have litigated this issue, in some form, in the Rhode Island courts, where he filed a "Motion to Reduce Sentence," which was denied without prejudice on May 31, 2000. *See State v. D'Amario*, 2001 R.I. Super. LEXIS 16, at *4-6 (Jan. 2, 2001). Additionally, D'Amario filed a "Supplemental Motion to Reduce Sentence" on August 11, 2000, which was denied on September 22, 2000 after the court heard argument on the motion. *Id.*

[I]f they make me work one more day, and continue to fuck up my sentence computation, I will seek revenge on the day of my inevitable discharge against the conspirators. As soon as I get off the bus in Providence next month or next year, I will kill the judges who directed the state police to frame me with those nursery rhymes. I may charge after one and break his neck with my bare hands, or I might douse myself with gasoline and light the match next to a judge, or I may get a gun and shoot them all . . . .

As I said, you must understand how sick I am of losing, and that I will not accept this latest conspiracy. The co-conspirators are:

1. R.I. judges
2. Mass. Judges
3. DiClerico
4. [The AUSA in the District of Rhode Island]
[12 others]

So the way we left it is that nobody had better push me or I'll explode. 'Leave me the fuck alone!' I said, or I'll kill somebody. I also said that I will not do this time and plan to beat the judges however I can even if it means hanging myself . . . .

But they have to let me out eventually. I've told them where we're at. If they don't drop these terror tactics immediately, I'm dedicated to killing R.I. judges when I'm out. I'll put the conspirators on the front page. . . . I dare anybody to push me. You can accept all they've done to me in this hoax case. I won't. If I'm in S.H.U. when this arrives, I expect you to call these [] and demand my release. They have no authority over me anymore. Arthur.

App. at 28, 106-116.

After consulting with the Rhode Island Supreme Court's Office of Disciplinary Counsel, Roy disclosed the contents of D'Amario's letter to the Federal Bureau of Investigation. App. at 117-119. A federal grand jury in Newark, New Jersey, indicted D'Amario for threatening to assault and murder a federal judge, in violation of 18 U.S.C.

§ 115(a)(1)(B), and the case was assigned to the Honorable Joseph E. Irenas.

In the meantime, D'Amario again challenged the BOP's decision by filing a second habeas petition under 28 U.S.C. § 2241, this time in the District of New Jersey, and that case was also assigned to Judge Irenas. Judge Irenas denied the petition, concluding that

> although Judge DiClerico recommended that petitioner be credit[ed] against his federal sentence for time served since March 3, 1999, the BOP properly calculated petitioner's sentence pursuant to § 3585(b). Under the statute, no prior custody may be credited to a prisoner's sentence if he has received credit for the same time period on another sentence. Thus, because D'Amario received credit from February 22, 1999 to March 13, 2000, toward his state sentence, the BOP appropriately concluded that the same time period could not be credited against the federal sentence.

App. at 758.[4]

D'Amario's trial on the threat charge began on November 29, 2001, and on December 4, 2001, a jury returned a guilty verdict. On January 18, 2002, the District Court denied D'Amario's motion for release pending sentencing, finding that D'Amario had failed to demonstrate that he was not a danger to the community. On February 26, 2002, however, the District Court reversed course and granted bail pending sentencing. In the course of the hearing, the Court referred to the issue of the BOP's treatment of the time that D'Amario had spent in custody prior to sentencing on the federal felon-in-possession charge. Among other things, the Court mentioned that "[t]here might be a downward departure issue," and recommended that defense counsel "give some thought to that." App. at 454. The government appealed the order releasing the defendant, and a panel of this court vacated that order and ordered that D'Amario be detained pending sentencing.

---

4. The Court also denied D'Amario's subsequent requests for reconsideration and other relief.

On April 5, 2002, the District Court commenced a sentencing hearing, and D'Amario's counsel, picking up on the Court's suggestion, moved for a downward departure from the applicable Sentencing Guidelines range in order to "rectify" the BOP's decision regarding credit for the time that D'Amario had spent in custody prior to sentencing on the federal felon-in-possession charge. App. at 555. Defense counsel stated: "It's clear to me that the VOP [violation of probation] credit decision is what led to his writing this letter." Id.

During continued sentencing proceedings on April 9, 2002, the District Court determined that under the Sentencing Guidelines D'Amario's Total Offense Level was 15.[5] Combining this Offense Level with D'Amario's Criminal History of Category V, the District Court determined that the defendant's Guidelines range was 37 to 46 months of imprisonment. However, the District Court departed downward three offense levels to a range of 27 to 33 months of imprisonment and imposed a sentence of 27 months followed by three years' supervised release.

Holding that D'Amario's case fell outside the "heartland" of cases under the applicable guideline, the District Court provided an oral explanation of the basis for its decision. We note five points that the Court made. First, the Court commented that it was difficult to identify the heartland of the offense in this case because the Statutory Index lists numerous guidelines that may apply to a violation of 18 U.S.C. § 115(a) and because it appeared to the Court that there were not many prosecutions under this provision. App. at 484-85.

---

5. Guideline 1B1.2 instructs the sentencing court to refer to the Statutory Index (Appendix A) to determine the appropriate guideline for the offense of conviction. Appendix A lists several Guidelines possibly applicable in the instance of a violation of 18 U.S.C. § 115(a). The District Court found U.S.S.G. § 2A6.1, Threatening or Harassing Communications, applicable to the offense conduct in the instant case and therefore determined that D'Amario's Base Offense Level was 12. App. at 483. Additionally, the court ruled that a three-level upward adjustment for "Official Victim" status under U.S.S.G. § 3A1.2 was applicable.

Second, the Court implied that D'Amario was not particularly dangerous. The Court observed that D'Amario's letter was "flaky," App. 588, and added:

> [T]his is a flaky case. It's flaky. I don't care what anybody says. . . . I don't blame the Marshals for taking it seriously. . . . I don't even blame anybody for being particularly frightened. It's a letter that is designed to frighten, and it does frighten. It doesn't change my view that the whole situation is just flaky.

*Id.* at 590. The Court commented that it had seen D'Amario's "ability to get angry and ferocious at judicial system" but had not seen "anything that's suggesting he's a mass murderer." *Id.* at 591.

Third, the Court implied that D'Amario may not have even violated 18 U.S.C. § 115(a)(1)(B). The Court stated that, while it was not impugning the jury's verdict, the Court had read the letter "about 300 times" and was "fairly sure" when "you parse it" that the only persons whom D'Amario actually threatened to kill were the Rhode Island state judges, not Judge DiClerico. App. at 589-91.

Fourth, the Court stated its belief that the sentencing expectations of both Judge DiClerico and Judge Clifton had been frustrated. The New Jersey District Court Judge stated that, in light of the information then before him,[6] it was clear that Judges DiClerico and Clifton wanted D'Amario's federal and state sentences to run concurrently but that these expectations were not realized because neither the state judge nor D'Amario's attorney had understood that, if he was given credit against his state sentence for the time that he had already spent in custody, 18 U.S.C. § 3585(b) would not permit that time to be credited against his federal sentence.

Fifth, the Court implied that D'Amario's frustration over this situation, while not a justification for his letter, was nevertheless a factor to consider. App. at 597-98. In sum, the Court stated that "the situation of a prisoner who writes

_____

6. Apparently, the New Jersey District Court did not have access to the Rhode Island Superior Court transcript when it denied D'Amario's habeas petition. App. at 701.

this kind of off-the-wall letter, threatening crazy letter, in the situation where he's being held in jail and on the face of the two judges who said he should be set free, is the basis for a downward departure." *Id.* at 592-598. Both D'Amario and the government appealed from the final judgment in the criminal case.

In the meantime, however, a development in state court in Rhode Island affected the calculation of D'Amario's sentence. D'Amario requested, and the Rhode Island state court granted, a six-month reduction of his probationary sentence on an unrelated 1996 Rhode Island conviction. This relief had the effect of decreasing D'Amario's Criminal History Category from V to IV. *See* U.S.S.G. § 4A1.2(c)(1). Citing the sentence reduction granted by the Rhode Island state court, D'Amario filed a motion under 28 U.S.C. § 2255 seeking that his 18 U.S.C. § 11(a)(1)(B) conviction be vacated, but the New Jersey District Court Judge denied that motion, and D'Amario appealed.

While the appeals from the judgment in the criminal case and the denial of the Section 2255 motion were pending in our Court, the parties filed a joint motion for a limited remand in the Section 2255 appeal, and we granted the motion so that the District Court could correct an "uncontested claim of error." App. 689. The District Court then reduced D'Amario's Criminal History Category from V to IV, and the Court again granted a three-level downward departure. The Court re-sentenced D'Amario to a 21-month term of imprisonment, a sentence at the bottom of the applicable range of 21 to 27 months. App. at 737. During the new sentencing hearing, the District Court again attempted to explain its three-level downward departure. The Court stated that, by virtue of the departure, D'Amario

> ha[d] gotten almost all he would have gotten had the habeas corpus been granted in the first instance. Now, I confess—you know, it's hard to put Humpty-Dumpty back together again. I think Mr. D'Amario—if he [was] let out in June [of 2000], this crime never would have happened, he never would have had to write the letter. You can't—you can't kind of view it in the abstract. It's

> not like he went out, robbed a bank, something totally unrelated to what was going on here.
>
> But be that as it may, at least in terms of credits, he has gotten the credit, or almost all of the credit . . . . So, he's come—he hasn't gotten it all, he's come very, very close to getting most of it.

*Id.* at 704. The government then took this appeal.

## II.

The standards for sentencing departures are familiar. The Sentencing Reform Act, 18 U.S.C. § 3353(b), requires a judge to impose a sentence within the pertinent guideline range unless the judge "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." In *Koon v. United States*, 518 U.S. 83, 93-96 (1996), the Supreme Court explained that factors relevant to departures are divided into four categories: prohibited, discouraged, unmentioned, and encouraged. Unless a factor is categorically prohibited, Koon held, a sentencing court must determine whether the particular case at hand falls outside the "heartland" of cases covered by the relevant guideline. *Id.* The Court wrote:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," *ibid.*, decide whether it is sufficient to take the case out of the Guideline's

> heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." 1995 U.S.S.G. ch. 1, pt. A, p. 6.

518 U.S. at 95-96 (citation omitted)

We have interpreted *Koon* as calling for a four-step inquiry:

> First, we determine if the factor relied upon in the case makes it special or unusual, taking it outside the heartland. Second, we determine whether departures on such factors have been forbidden by the Commission. Third, we determine whether the Commission had encouraged departures based on such factors. Fourth, we determine whether the Commission has discouraged departures based on such factors.

*United States v. Yeaman*, 248 F.3d 223, 231 (3d Cir. 2001).

Under *Koon*, we do not defer to a district court's decision as to "whether a factor is a permissible basis for departure under any circumstances." *Koon*, 518 U.S. at 100. However, *Koon* instructs us otherwise to apply an abuse-of-discretion standard. *Id.* at 98.

After the sentence in the present case was imposed and this appeal was fully briefed, Congress amended 18 U.S.C. § 3742(e) and directed us to "review de novo the district court's application of the guidelines to the facts." The government has argued that this provision applies to appeals pending when it took effect and is thus applicable here. *See United States v. Thurston*, 2003 WL 21782339 2003 U.S. App. LEXIS 155161 (1st Cir. Aug. 4, 2003); *United States v. Aguilar-Lopez*, 329 F.3d 960, 962-63 (8th Cir. 2003). However, because this question has not been fully briefed and because we need not resolve this question in order to decide the present appeal, we do not do so. We assume for the sake of argument that the standards of review set out in *Koon* still govern.

## III.

The District Court did not provide a single, compact explanation of the specific reason for its departure decision.

Instead, as noted, the Court's discursive oral comments touched on many matters, and it is not entirely clear which of the matters discussed were regarded by the Court as grounds for departure. On appeal, D'Amario first argues that "[t]he District Court based the downward departure on a number of circumstances," Appellee's Br. at 30, but D'Amario later states that "there were two factors that led to the Court's decision to depart": (1) the BOP's decision regarding credit against his felon-in-possession sentence and (2) the fact that "the denial of credit by BOP was the direct 'causation' of the offense of threatening a federal judicial official." Appellee's Br. at 33. We agree that these latter factors seem to have been the most important, but we will address all of the previously noted points made by the District Court during its oral comments.

*Paucity of prosecutions under 18 U.S.C. § 115.* The District Court commented that it was "hard figuring out the heartland" of the offense in this case because the Statutory Index lists numerous guidelines that may apply to a violation of § 115(a) and because it appeared to the Court that "this is not a frequently prosecuted crime." App. 484-85. Many pages later in the transcript of the sentencing proceeding, the Court commented:

> The question I have is this case out of the heartland, and I believe that at least one respect it is out of the heartland. For one thing, 115, I'm [not][7] sure I know what the heartland is.

*Id.* at 591. On appeal, D'Amario lists as a factor justifying departure "the fact that the District Court had not seen a large number of Section 115(a)(1)(B) 'threat' prosecutions, and that there was not a lot of case law nor practical experience to guide the Court." Appellee's Br. at 30.

The departure in this case cannot be sustained on these grounds. First, it is irrelevant for present purposes that there is not one single guideline for all § 115(a) cases. At most, the number of potentially applicable guidelines listed in the Statutory Appendix might complicate the selection of

---

7. Although the important word "not" does not appear in the transcript, we take it that this was a transcription error or slip of the tongue.

the correct guideline. Once the most appropriate guideline is identified, however, the question with respect to any departure is whether the case falls within the heartland of the guideline selected, and the other guidelines not selected have no bearing on that determination.[8]

Second, to the extent that the District Court suggested that a departure was warranted because of the paucity of prosecutions under 18 U.S.C. § 115(a)(1)(B) for threatening a federal official, the Court committed both legal and factual error. A guideline need not apply to a great number of cases in order to have a "heartland," and the government has cited a sufficient number of reported cases involving threats to kill federal officials to convince us that, if the District Court found to the contrary, it erred under any standard of review.

*D'Amario does not pose a risk of committing mass murder.* As noted, the District Court opined that in its view D'Amario is "flaky" but not likely actually to carry out his threat to kill the long list of "conspirators" set out in his letter. However, the absence of evidence that a defendant is likely to carry out a threat is a factor already taken into account in U.S.S.G. § 2A6.1. Under U.S.S.G. § 2A6.1(b)(1), a court is instructed to increase the offense level by six "[i]f the offense involved any conduct evidencing an intent to carry out such threat." Thus, the base offense level is meant to apply to cases — such as the present one (as the District Court viewed it) — in which there is no evidence at all that the defendant intended to carry out his or her

---

8. Moreover, we see nothing confusing about the listing in the Statutory Appendix for 18 U.S.C. § 115(a). That provision covers a broad range of criminal conduct, including murder, kidnaping, and assault, as well as attempts, conspiracies, and threats to commit those offenses. The Statutory Index therefore lists three guidelines for homicide, three guidelines for assault, one for kidnaping, one for threatening or harassing communications, and one for inchoate offenses (attempt, solicitation, and conspiracy). Since the present case involved the sending of a threatening letter and plainly did not involve a homicide, assault, kidnaping, or an inchoate offense, the selection of the most pertinent guideline — U.S.S.G. 2A6.1 (Threatening or Harassing Communication) — is straightforward, and this is the guideline identified by the District Court.

threat. Threatening communications are made criminal, not just because they may be harbingers of violence, but because they are harmful in themselves in many ways.

Whether a departure might be granted in a case in which the record makes it unusually clear that the defendant posed no threat is a question that we need not address, for this is not such a case. The defendant's long criminal record includes firearms offenses. At trial, the government introduced evidence that the defendant was interested in acquiring guns after release from prison. App. at 123-25, 218. Even under an abuse-of-discretion standard, a departure on this ground cannot be upheld.

*D'Amario did not actually threaten to kill Judge DiClerico.* After reading the defendant's letter "about three hundred times" and "pars[ing] it," the District Court came to the conclusion that the letter actually threatened to kill only the Rhode Island state judges. App. 589-90. As to Judge DiClerico and the others listed in the letter as "co-conspirators," the District Court concluded, D'Amario merely threatened to "embarrass them on the front page of the paper." *Id.* at 590. The departure clearly cannot be justified on this ground.

The indictment charged D'Amario under 18 U.S.C. § 115(a)(1)(B) with threatening to assault and murder a federal judge. In order to convict, the jury had to find beyond a reasonable doubt that D'Amario threatened to kill Judge DiClerico, not the Rhode Island state judges. D'Amario's letter strongly supports that verdict. The letter uses the term "kill," threatens "revenge . . . against the conspirators," and lists "DiClerico" as one of the co-conspirators.

Applying the four-step procedure set out in *Yeaman*, we hold that a departure based on the weakness of the evidence that the defendant threatened Judge DiClerico fails at the first step — requiring that "the factor relied upon in the case makes it special or unusual, taking it outside the heartland." 249 F.3d at 231. To the extent that the District Court found that the evidence in this case was exceptionally weak, the Court abused its discretion. On the contrary, the evidence was strong. We further note that we

have held that a departure on the ground that the District Court "doubts the veracity of government witnesses and the guilty verdict they support" is "categorically inappropriate." *United States v. Haut*, 107 F.3d 213, 219 (3d Cir. 1997). The logic of *Haut* would appear to dictate a similar conclusion here.

*D'Amario spent an "unfair" amount of time in prison on his prior federal and state convictions in Rhode Island.* It appears that a principal basis for the downward departure was to correct a perceived inequity regarding D'Amario's prior federal and state sentences in Rhode Island — specifically, what the District Court viewed as the frustration of the sentencing expectations of Judges DiClerico and Clifton. As noted, it seems that Judge Irenas's objective was to make sure that the total amount of time that D'Amario spent in prison on the Rhode Island offenses (the federal felon-in-possession offense and the state violation-of-probation charge) plus the District of New Jersey sentence for threatening to kill Judge DiClerico roughly equaled the amount of time that D'Amario would have spent in prison on those offenses had his time in pre-sentencing custody in Rhode Island been credited against the felon-in-possession sentence. The sentencing judge commented that the downward departure gave D'Amario "almost all he would have gotten had the habeas been granted in the first instance." App. at 704. The Court also analogized D'Amario to a person who is "falsely imprisoned." *Id.* at 659. To put the point succinctly, the Court seems to have based the downward departure in large part on the circumstance that D'Amario had not been treated fairly (in the Court's judgment) with respect to the amount of time that he was required to serve on prior sentences.

If it were not for *Koon*, we would be inclined to hold that a defendant's having had to serve an "unfair" amount of time in prison on a prior conviction is a prohibited factor for purposes of departure. Permitting sentencing judges to review the fairness of prior sentences would unduly complicate sentencing. It is noteworthy that a prior conviction generally cannot be collaterally attacked in connection with the determination of a defendant's

Criminal History Category. U.S.S.G. § 4A1.2, Application Note 6. *Cf. Custis v. United States*, 511 U.S. 485, 496-97 (1994). Permitting sentencing judges to review the fairness of prior periods of incarceration would also contravene a major objective of the pre-Sentencing Reform Act, *viz.*, precluding individual District Judges from implementing their own sentencing "philosophies." In this case, for instance, the District Court's decision was based on the reasonable (but hardly undisputed)[9] view that the expectations of sentencing judges as to the amount of time that a defendant should spend behind bars should prevail and that any other result is unfair. If a departure is allowed to bring a defendant's prior periods of incarceration into conformity with that philosophy, may a judge award a downward departure because the judge thinks that the defendant's sentence in a prior case (under, for example, a harsh recidivist statute or a drug statute with a high mandatory minimum sentence) was too long? May a judge award an upward departure to compensate for a prior sentence that the judge thinks was too short or for what the judge views as an unwarranted parole decision in a previous case?

In light of *Koon*, however, we do not hold that a defendant's having previously served an "unfair" sentence is a forbidden factor. *Koon* states that "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed as a categorical matter, consideration of the factor." 518 U.S. at 108.

For present purposes, we will assume that a defendant's having spent an "unfair" amount of time in prison on a prior conviction is merely, as D'Amario argues, an unmentioned factor. *Koon* tells us to "bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly

---

9. There are reasonable sentencing schemes — such as indeterminate sentencing — that reject that view. *See also United States v. Addonizio*, 442 U.S. 178 (1979) (sentence may not be collaterally attacked on ground sentencing judge's expectations regarding length of actual incarceration were frustrated).

infrequent.'" 518 U.S. at 96 (quoting 1995 U.S.S.G. ch. 1, pt. A, p. 6). In this case, we hold that the District Court abused its discretion in concluding that this factor is present to such a degree that it "take[s] the case out of the Guideline's heartland." *Koon*, 518 U.S. at 96.

It is common for defendants who have previously served time in prison to have at least colorable complaints about the length of a prior sentence, a parole decision, a decision on good-time credits, or some other decision that affected the amount of time spent in prison. The great sentencing disparities that prevailed before the advent of the Sentencing Reform Act show that there is much room for reasonable debate about what is a "fair" sentence in any particular case, and thus it is quite common for a previously incarcerated defendant to be able to make a plausible argument that his or her prior period of confinement was "unfair." Nothing about the present case makes it so exceptional in this regard as to justify a downward departure.

Indeed, the District Court itself commented several times during the sentencing proceedings that the precise situation at issue here with regard to D'Amario's felon-in-possession and violation of probation sentences is one that recurs. During the hearing on April 5, 2000, for instance, the Court stated that "unfortunately, it's the same scenario that has occurred over and over again," the "very problem that in this case and many other cases that I've had, I think many cases around the country." App. at 539, 541. We hold that the District Court did not properly exercise its discretion in concluding that the events surrounding D'Amario's prior state and federal sentences in Rhode Island took the case outside the Guidelines.

*D'Amario was provoked to write the threatening letter because he was kept in prison longer than was "fair."* We reach a similar conclusion regarding this final factor. It is common for persons who threaten federal officials to feel that they have grievances against the person threatened or against the government. Assuming for the sake of argument that a downward departure based on a defendant's having a colorable complaint is not categorically prohibited in a case involving a threat to kill, there is certainly nothing

sufficiently atypical about this case to justify a downward departure on that ground. If the District Court's suppositions about the intentions of the federal and state judges in Rhode Island are correct, D'Amario spent about a year longer in prison than he might have if the state judge had been more skillful in designing the state sentence. Without in any way minimizing the significance of a year in prison, we are convinced that this grievance does not even come close to the level that would be needed to render this case atypical in the sense relevant here. The District Court's contrary conclusion is not consistent with a proper exercise of discretion.

## IV.

For these reasons, we vacate the sentence imposed by the District Court and remand for the sole purpose of imposing a sentence within the range previously found by the District Court to be applicable, i.e., 30 to 37 months' imprisonment.

A True Copy:
      Teste:

                    *Clerk of the United States Court of Appeals*
                              *for the Third Circuit*