

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-1996

# United States v. Romualdi

Precedential or Non-Precedential:

Docket 96-7113

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Romualdi" (1996). *1996 Decisions.* Paper 13.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/13

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 96-7113


UNITED STATES OF AMERICA,
                              Appellant
            v.

ROMEO ROMUALDI


On Appeal from the United States District Court
     for the Middle District of Pennsylvania
            (D.C. No. 95-cr-00197)


Argued July 18, 1996

Before:  SLOVITER, Chief Judge,
     COWEN and ROTH, Circuit Judges

(Opinion filed December 11, 1996)

David M. Barasch
United States Attorney

Theodore B. Smith, III  (Argued)
Assistant United States Attorney
Office of United States Attorney
Harrisburg, PA  17108

        Attorney for Appellant

Robert Sullivan, Jr. (Argued)
Sullivan, Sullivan & Snelling
Lebanon, PA  17042

        Attorney for Appellee

OPINION OF THE COURT


SLOVITER, Chief Judge.
        In United States v. Bierley, 922 F.2d 1061 (3d Cir.

1990), we held that a sentencing court has authority to depart downward under the Sentencing Guidelines by analogy to the adjustment for Mitigating Role in the Offense if defendant would have been entitled to that adjustment had the supplier, an undercover postal inspector, been a criminally culpable participant.  In this case we are asked to consider whether Bierley should be extended to a defendant charged and convicted of a single-person offense.

I.

FACTS AND PROCEDURAL HISTORY

In May 1995, Appellee Romeo Romualdi ordered a catalog by mail from L.G. Enterprises, a business that sold pornographic materials.  Unknown to Romualdi, L.G. Enterprises had recently been the subject of a federal investigation and was taken over by the Postal Inspection Service.  The following month Romualdi ordered two videotapes from L.G. Enterprises.  One of the tapes was entitled "First Fuck," and was described in the catalog as "Twelve Year Old Girl Has Sex With A Man For The First Time In Her Life."  The second tape was entitled "Wash Time," and was described as "Eleven Year Old Girl Bathes With Woman, Have Sex Together and With A Man."  Romualdi requested that the tapes be sent to his home in Lebanon, Pennsylvania but that they be addressed to "Superior Merchandise" rather than to him in his own name.

On July 6, 1995, the tapes were delivered to Romualdi's residence while postal inspectors maintained surveillance of the delivery.  Romualdi received the tapes, and ten minutes later the investigators searched his home pursuant to a federal search warrant.  During the search they found that the two tapes that had just been delivered to Romualdi were in a garbage can covered with newspaper.  A further search revealed more pornographic material.  The inspectors found two more tapes that purported to be depictions of nudist colonies, in which the camera focused upon the genitals of young girls.  They also found thirteen pornographic videos depicting adult women dressed as girls.  Romualdi also had pasted the faces of young girls, which he obtained from a Sears catalog, over the faces of women in the photographs of adults having sex.  The inspectors also found a video entitled "Fallen Angel," which the presentence report describes as "a non-pornographic movie dramatizing the sexual relationship be[twe]en an adult male and a twelve year old girl whom the male lures into child pornography."

Romualdi told the postal inspectors that when he ordered the two tapes from L.G. Enterprises he believed that they would be like the other tapes he owns in which the people in the tape were all over eighteen and were only dressed like children. He stated that he had started to view the tapes but had thrown them away because of their poor quality.  He also stated that the reason why he had the tapes addressed to "Superior Merchandise," rather than his own name, was to avoid embarrassment if the packages had broken open while being transported through the mails.  When questioned about the pictures with the girls' faces pasted to them, Romualdi admitted that he fantasized about young girls having sex.

After consulting an attorney, Romualdi signed a plea agreement with the government. Pursuant to that agreement, Romualdi pleaded guilty to knowingly possessing three or more videotapes containing child pornography, a crime under 18 U.S.C. § 2252(a)(4). Child pornography is defined as material "which involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(1)(A). Romualdi also agreed to provide the government with information that would be useful in future investigations relating to child pornography. The government agreed not to bring any more charges against Romualdi and agreed to seek the sentencing term available under the Sentencing Guidelines.

The United States Parole Office calculated Romualdi's base offense level at 13 pursuant to U.S.S.G. § 2G2.4(a), "possession of child pornography." Because some of the tapes in Romualdi's possession depicted girls under the age of twelve, the base level was increased by two to 15, pursuant to U.S.S.G. § 2G2.4(b)(1). The level was then lowered two points because of Romualdi's acceptance of responsibility, thereby bringing the total offense level to 13. Because Romualdi had no previous criminal record, the sentencing range for level 13 was calculated at twelve to eighteen months. The presentence report stated that consistent with this court's decision in United States v. Bierley, 922 F.2d 1061 (3d. Cir. 1990), the district court could depart two or four levels from the total offense level by analogy to U.S.S.G. § 3B1.2, if the court determined that Romualdi was a minimal or minor participant in the offense.

The presentence report noted that Romualdi had been in the Army for two years, had a good family background and had a good relationship with his 26 year old daughter, who was born from Romualdi's five year cohabitation with a girlfriend. None of those questioned was able to explain the conduct leading to the offense.

At the suggestion of the probation officer, Romualdi underwent a psychological evaluation by Roy Smith, Ph.D., Executive Director of Pennsylvania Counseling Services. In his report, Dr. Smith suggested that Romualdi suffered from a moderately severe dependent personality disorder with prominent obsessive compulsive traits, and that he needed to be seen in a good light by other people but had isolated himself from society. The doctor believed that Romualdi viewed pornographic films because of this isolation – as a way to feel closer to society – and he indicated that Romualdi's interest in pornographic films with child themes "may signify a developmental arrest or sexual addiction." Dr. Smith concluded that time in jail would be counterproductive as it would only increase Romualdi's isolation from his already limited social network and exacerbate his psychological condition. In addition, incarceration would interfere with Romualdi's operation of the pool hall and t-shirt store that he owns, thus creating additional financial stress which could lead to further psychological isolation. Instead, the doctor recommended that Romualdi be placed on probation and forced to attend group therapy for sexually addictive and child molesting individuals.

At Romualdi's sentencing, which took place in district court on January 16, 1996, the government followed the plea agreement and recommended the minimal sentence available under the applicable sentencing range, twelve months in jail. The court, however, departed from the Guidelines, citing as authority our opinion in Bierley, and reduced Romualdi's total offense level by three, from 13 to 10, finding by analogy to § 3B1.2 of the Sentencing Guidelines that the defendant's conduct qualified for a mitigating role reduction. Using the new offense level of 10, the court sentenced Romualdi to three years probation, six months of which would be spent in home confinement, and a $5,000 fine. The United States appeals.

We have jurisdiction over the government's appeal from the district court's judgment of sentence pursuant to 18 U.S.C. § 3742(b) (1993) and 28 U.S.C. § 1291 (1993).

## II.
### STANDARD OF REVIEW

In its recent opinion in Koon v. United States, 116 S.Ct 2035, 2043 (1996), the Supreme Court held that in reviewing appeals from a district court's decision to depart from the sentencing ranges in the Sentencing Guidelines, "[t]he appellate court should not review the departure decision de novo, but instead should ask whether the sentencing court abused its discretion." Id. at 2043. Nonetheless, the appellate court retains the obligation to correct mistaken legal conclusions. As the Supreme Court stated in Koon:

> [W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point. Little turns, however, on whether we label review of a particular question abuse of discretion or de novo, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law.

Id. at 2047 (citations omitted).

The government argues that the district court erred as a matter of law in concluding that it had the authority to depart downward from the guidelines under our holding in Bierley, and that our review is plenary. The government's brief was filed before the Koon decision, but for practical purposes our review is the same under the abuse of discretion standard since we must examine what is, in substance, a legal issue.

## III.
### DISCUSSION
#### A.

Bierley, upon which the district court and presentence report relied, involved the sentencing of a defendant who pled guilty to receipt of child pornography under circumstances similar, but not identical, to those involved here. Like Romualdi, Bierley ordered materials that contained child pornography through the mail. See Bierley, 922 F.2d at 1063. An

undercover postal agent acted as the distributor of the materials -- four magazines depicting children in sexually-suggestive poses and involved in sexual activities -- and after the magazines were delivered, the postal inspectors conducted a search of Bierley's house. Id. Unlike the search of Romualdi's residence, however, the inspectors found no other articles of child pornography except for the magazines that Bierley had received through the sting operation. Id. at 1064. Bierley was arrested and eventually pleaded guilty to "willfully and knowingly receiving and causing to be delivered by mail, visual depictions of minors engaging in sexually explicit conduct," in violation of 18 U.S.C. §2252(a)(2). Id.

At his sentencing hearing, Bierley contended that he was entitled to a downward adjustment in his sentence as a minor or minimal participant in the offense. Id. Chapter 3, Part B, of the Sentencing Guidelines provides for adjustment of a defendant's offense level predicated on his or her role in the offense. See U.S.S.G. § 5H1.7. U.S.S.G. § 3B1.1 allows for a downward adjustment where a defendant acted as a minor or minimal participant in a concerted activity. The Mitigating Role Guideline provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by three levels.

U.S.S.G. § 3B1.2.

The district court declined to adjust Bierley's offense level pursuant to U.S.S.G. § 3B1.2, holding that under the language of § 3B1.2, the mitigation is available only when the defendant is a minimal or minor "participant" in an offense that involves concerted activity. See Bierley, 922 F.2d at 1066. A "participant" is defined as a person who can be held "criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, comment. (n.1). Bierley was the only "participant," inasmuch as the undercover postal inspector who sent the child pornography was not "criminally responsible" and there was no one else involved in the activity to whom Bierley could be compared for culpability. See Bierley, 922 F.2d at 1066; see also United States v. Katora, 981 F.2d 1398, 1402 (3d Cir. 1992) (citing Bierley for the rule that sections 3B1.1 and 3B1.2 only apply where there is more than one "participant" in the offense); United States v. Badaracco, 954 F.2d 928, 934 (3d Cir. 1992) (same).

On Bierley's appeal, we agreed that U.S.S.G. § 3B1.2 was not directly applicable if there was no more than one criminally responsible participant, but we nevertheless held that the district court did have the authority to depart downward from the Guidelines in that situation. Relying on the principles

underlying the Sentencing Commission's departure policy and the language in the Guidelines allowing for discretionary departure, see 18 U.S.C.A § 3553(b), U.S.S.G. § 5K2.0, we held that district courts have the authority to apply the Guidelines by analogy in the rare cases when the basis for the departure is conduct similar to that encompassed in the "Role in the Offense" Guidelines but otherwise unavailable to the defendant.  Bierley, 922 F.2d at 1068.  Where a case is atypical, or for some other reason falls outside of the scope of the cases considered by the Sentencing Commission in drafting the Guidelines, the district court may use analogic reasoning to allow a departure.  Id. at 1067-69.

Bierley's situation was atypical because he was being denied the opportunity for mitigation under § 3B1.2 simply because the other person involved in the activity could not be considered a "participant" in the activity as defined by the Sentencing Guidelines.  See Bierley, 922 F.2d at 1068.  Thus, we instructed the district court that it could depart from the Guidelines and adjust Bierley's sentence in a manner analogous to § 3B1.2 if the court believed Bierley's conduct would qualify as "minor" or "minimal" had the postal agent been a "participant." See id. at 1070; see also United States v. Stuart, 22 F.3d 76, 83 (3d Cir. 1994) (in departing by analogy, "'the court predicts what level of punishment the Sentencing Commission would have assigned to the offense had it been considered...'.") (quoting United States v. Strickland, 941 F.2d 1047, 1051 (10th Cir.), cert. denied, 112 S.Ct. 614 (1991)).

The Second Circuit adopted the reasoning of Bierley in United States v. Speenburgh, 990 F.2d 72, 74 (2d Cir. 1993), as did the Ninth Circuit in United States v. Valdez-Gonzalez, 957 F.2d 643, 648 (9th Cir. 1992).

The government argues that this case is not analogous to Bierley.  The principal distinction that the government proffers is that unlike Bierley, who pled guilty to receipt of child pornography, Romualdi pled guilty to possession of child pornography.  The government argues that while the receipt of child pornography may be viewed as a concerted activity, to which § 3B1.2 is or could be applicable if the party sending the material had not been a government agent, the possession of child pornography is a single-person offense, to which § 3B1.2 is inapplicable.

The government's argument is not merely technical. Both the relevant statute and the Sentencing Guidelines make a distinction between receipt and possession of child pornography. Under 18 U.S.C. § 2252(a), which criminalizes certain activities in such materials that have been mailed, shipped or transported in interstate or foreign commerce, there is a distinction made among the types of activity with which the defendant is charged. Subsection (a)(1) covers any person who "knowingly transports or ships" such material.  Subsection (a)(2) covers any person who "knowingly receives or distributes" such material.  Subsection (a)(3) covers any person who "knowingly sells or possesses with intent to sell" such material.  Subsection (a)(4) covers any person who "knowingly possesses 3 or more copies of such

material."

Those convicted of one of the first three subsections, those engaged in knowing transportation or shipment, receipt or distribution, and sale or possession with intent to sell, are subject to fine and/or imprisonment for not more than ten years for the first such conviction. See 18 U.S.C. § 2252(b)(1). In contrast, those covered by Subsection (a)(4), i.e., the knowing possession of the material, are subject to imprisonment for not more than 5 years, half the sentence of one convicted of knowing receipt. See id. at (2).

The Sentencing Guidelines also differentiate between receipt of child pornography and mere possession. Receipt, the more serious offense, carries an offense level of 15 whereas possession, rated less seriously, carries an offense level of 13. Compare U.S.S.G. § 2G2.2 with U.S.S.G. § 2G2.4. Before there can be an adjustment of the offense level under § 3B1.1 or § 3B1.2, the offense must be one that meets the threshold requirement of involving more than one criminally responsible participant. As we explained, "[t]his follows because the adjustments authorized for role in the offense are directed to the relative culpability of participants in group conduct." Bierley, 922 F.2d at 1065; see also United States v. Thompson, 990 F.2d 301, 304 (7th Cir. 1993) (holding that defendant convicted of being a felon in possession of a firearm, a single-person offense, not entitled to mitigation under U.S.S.G. § 3B1.2).

Departure was authorized in Bierley because Bierley's offense, receipt of child pornography, involved a concerted activity between himself and the sender and, but for the fact that the other persons involved in the offense were federal agents immune from criminal responsibility, Bierley would have been entitled to consideration for adjustment in offense level via a direct application of § 3B1.2.

The crime to which Romualdi pled guilty as charged, possession, not receipt, of child pornography, is a crime that on its face requires no concerted activity. Although in almost all instances the possession followed receipt, they are different crimes as noted above. Because the purpose of § 3B1.2 is to permit mitigation of the sentence of a defendant who is a minimal participant in an offense involving concerted activity, Romualdi would not have been entitled to an adjustment under § 3B1.2, even if the person that delivered the pornography had been criminally responsible.

Romualdi asserts that his simple act of possession was a minimal part of a larger distribution ring, a criminal scheme that was directed and controlled by other persons. He reasons that had the other participants in the scheme not been undercover agents, he, like Bierley, would have been entitled to a reduction in sentence if it was determined that his role was minor or minimal pursuant to U.S.S.G § 3B1.2. Romualdi is simply wrong in that claim because the offense of which he was charged and convicted was significantly less serious than warranted by his actual conduct. Therefore, even had his conduct involved a concerted activity, he would have been ineligible for mitigation under U.S.S.G. § 3B1.2.

Comment Four of the Guideline Commentary to U.S.S.G. § 3B1.2 states in part:

> If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such a defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

> U.S.S.G § 3B1.2, comment. (n.4).

This commentary, which was added by amendment in 1992, has not been the subject of any reported opinion by this court. Other courts of appeals, however, have determined that a reduction under § 3B1.2 is unavailable to a defendant in Romualdi's situation. See United States v. Windom, 82 F.3d 742, 748 (7th Cir. 1996) (defendant not convicted of larger drug conspiracy not entitled to reduction under § 3B1.2); United States v. Lucht, 18 F.3d 541, 556 (8th Cir. 1994) (same); United States v. Olibrices 979 F.2d 1557, 1560 (D.C. Cir. 1992) (same). A contrary rule would permit a defendant to claim s/he played a minimal part in a more serious offense in order to obtain a reduction under U.S.S.G. § 3B1.2, even though the more serious offense was not taken into account in setting the initial base offense level in the first place. Not only would such a rule contravene the purposes of the "Mitigating Role in the Offense" Guideline, which is designed to temper the injustice of treating unequally culpable defendants the same for sentencing purposes, it also leads to

> the absurd result that a defendant involved both as a minor participant in a larger distribution scheme for which she was not convicted, and as a major participant in a smaller scheme for which she was convicted, would receive a shorter sentence than a defendant involved solely in the smaller scheme.

Olibrices, 979 F.2d at 1560.

Here, Romualdi pled guilty to possession of child pornography pursuant to 18 U.S.C. § 2252(a)(4), and therefore he obtained the benefit of a lower base offense level then had the crime been receipt of child pornography. U.S.S.G. § 3B1.2 is simply unavailable, by analogy or otherwise, under these circumstances. For the reasons set forth above, we must vacate the district court's judgment of sentence and remand to the district court for resentencing.

B.

Our holding that the district court's departure in this case was one that had no basis in the law because § 3B1.2 would not have been applicable in any event does not preclude the district court from considering departure on another ground.

This matter came before the district court for sentencing before the Supreme Court announced its decision in Koon which clarified the grounds upon which a district court may and may not depart. The Court explained in Koon that the availability of departure depends on whether the special factor used by the district court as a basis for departure is an "encouraged" factor because it is one that "the Commission has not been able to take into account fully in formulating the Guidelines," a "discouraged" factor, or one that is unmentioned in the Guidelines. Koon, 116 S.Ct. at 2045 (internal quotation marks omitted).

The Court noted that if the factor is one that is encouraged, the sentencing court is authorized to depart if the applicable guideline does not already take it into account. In contrast, a discouraged factor is not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, and therefore should be relied upon only "in exceptional cases." Id. Finally, in discussing a factor that is not mentioned at all, the Court stated that the sentencing court had authority, after considering the "'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' . . . to decide whether it is sufficient to take the case out of the Guideline's heartland." Id. at 2045 (quoting United States v. Rivera, 994 F.2d 941, 949 (1st Cir. 1993) [an opinion by then Judge, now Justice, Breyer]). The Court thus recognized a flexibility in departure that may not have been hitherto fully appreciated by the district courts.

In this connection, we note that Romualdi has apparently completed his service of the most stringent part of the sentence imposed by the district court, i.e. home confinement for six months. On remand, the district court may want to consider whether this is a factor that would warrant departure. A similar situation arose in United States v. Miller, 991 F.2d 552 (9th Cir. 1993), where the sentencing court had departed on the ground that the defendant had two children who would be placed at potential risk, a factor that was found by the Court of Appeals to have been improper inasmuch as the Commission had concluded it is not ordinarily relevant in determining whether to depart. Id. at 553; see United States v. Shoupe, 929 F.2d 116, 121 (3d Cir. 1991). Nonetheless, the Court of Appeals noted that the defendant had almost finished serving her six months of home detention at the time the district court held a second sentencing hearing, a fact also cited by the district court in departing from the applicable guideline range. The Court of Appeals stated, in language equally relevant here:

> We agree it may have been proper to depart
> because of the six months of home detention
> Miller had already served. The fact that
> she'd already been punished to some extent is
> certainly relevant to what further sentence
> is needed to punish her and deter others.
> See 18 U.S.C § 3553(a)(2) (sentence should
> reflect these and other considerations). And
> because the Commission seems not to have
> considered the issue of compensating for time

> erroneously served, the district court was
> free to depart. See 18 U.S.C. § 3553(b).

Miller, 991 F.2d at 554. We agree.

We do not suggest that this is the only possible basis for departure, an inquiry that the Supreme Court emphasized in Koon is primarily within the discretion of the sentencing court. However, we do emphasize that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." Koon, 116 S.Ct. at 2035 (quoting 1995 U.S.S.G. ch. 1, pt. A). As we observed in Bierley, departures not anticipated by the Sentencing Commission in promulgating the Guidelines should be resorted to only in the most "rare occurrences," Bierley, 922 F.2d at 1069; a sentencing court should be able to articulate "'what features of [the] case take it outside the Guideline's 'heartland' and make of it a special, or unusual, case.'" Koon, 116 S.Ct. at 2035 (quoting Rivera, 994 F.2d at 949).

IV.

CONCLUSION

For the reasons set forth above, we will vacate the judgment of sentence and we will remand this case to the district court for resentencing.