**UNITED STATES of America,**

v.

**Julio Enrique SUTTON, Defendant.**

**Crim. No. 96–469(WGB).**

United States District Court,
D. New Jersey.

July 22, 1997.

Joan Thomas, Asst. U.S. Atty., United States Attorney's Office, Newark, NJ, for Plaintiff.

Patricia D.Codey, Assistant Federal Public Defender, District of New Jersey, Newark, NJ, for Defendant.

*OPINION*

BASSLER, District Judge:

I. *BACKGROUND*

This matter is before the Court for the sentencing of Julio Enrique Sutton.

Mr. Sutton pled guilty to one count of importing heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1). These statutes carry a mandatory minimum of 60 months imprisonment.

During the summer of 1996, Mr. Sutton obtained a passport and airline tickets to Cali, Columbia in order to obtain heroin to smuggle into the United States. Mr. Sutton expected to be paid $16.50 for each gram of heroin he smuggled. (Presentence Report ¶ 8).

Mr. Sutton returned to Newark International Airport on August 4, 1996 from Cali, Columbia. An X-ray examination of Mr. Sutton revealed the presence of foreign substances in his digestive tract. During the next two days, Mr. Sutton excreted 75 pellets of heroin containing 580.8 grams of heroin. (PSR 8, 12).

The Presentence Report calculates Mr. Sutton's total offense level to be 23 and his criminal history category to be II, resulting in a sentencing range of 60 to 63 months. For the reasons set forth below, the Court calculates Mr. Sutton's total offense level to be 25 and his criminal history category to be II, resulting in a sentencing range of 63 to 78 months.

II. *DISCUSSION*

A. *Base Offense Level*

The parties agree that Mr. Sutton imported between 400 and 700 grams of heroin into the country, giving him a base offense level of 28. U.S.S.G. § 2D1.1(c)(6).

B. *Minor Role Adjustment*

The plea agreement entered into in this case stipulates that Mr. Sutton played a minor role in the activities surrounding the importation of heroin into the country and suggests a two-point downward adjustment. ▪ The Court, of course, is not bound by the parties' plea agreement. *United States v. Forbes,* 888 F.2d 752, 754 (11th Cir.1989) (court not bound to find that defendant played a minor role as stipulated); U.S.S.G. § 6B1.4(d).

■ Granting a downward adjustment on the facts of this case is contrary to Third Circuit law, and the Court, therefore, declines to do so. Similar contentions have been flatly rejected by the Third Circuit at least twice. *See United States v. Hernandez*, 107 F.3d 864 (3d Cir.1997) ("Since the defendant's offense level was determined solely by his own conduct as a courier, the district court did not err in refusing to further reduce his role based upon his relationship to other participants...." Since Hernandez imported all 680 grams involved, he can hardly be considered a "minor participant") (affirming Bassler, J.); *United States v. Mendoza–Rodriguez*, 107 F.3d 9 (3d Cir. 1997) ("... it is impossible for the defendant to have been a minor participant in the offense for which he was charged, because he was the *only* participant in the offense for which he was charged. He can not have been a minor participant in his own possession of illicit drugs"); *United States v. Uriostegui–Estrada*, 86 F.3d 87, 90 (7th Cir.1996) (a drug courier who "was sentenced only for the amount of drugs he carried" rather than "as a participant in a larger enterprise" played a "significant rather than a minor role in that offense"). Here, as in the above-cited cases, Mr. Sutton is not charged for his role in some larger offense; rather, he is charged for importing heroin that he himself actually imported into the United States. His role in that offense is not minor. Therefore, he is not entitled to a two-point downward adjustment for minor role.

### C. *Acceptance of Responsibility*

The Court sees no basis for disputing the additional three point downward adjustment for Mr. Sutton's acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) & (b).

Mr. Sutton's total offense level, after adjustments therefore, is **25.**

### D. *Criminal History Category*

The Probation Department initially calculated Mr. Sutton's criminal history category to be III, based on three criminal history points. Mr. Sutton objected, arguing that one of the points had been improperly calculated. The Probation Department subsequently revised its recommendation to reflect a criminal history category of II. Mr. Sutton has voiced no further objection to the Probation Department's revised recommendation.

The Court's review of the record confirms that Mr. Sutton's criminal history points total 2, placing him in criminal history category II.

### E. *Shock Incarceration Program. Bureau of Prisons Designation and Bureau of Prisons Drug Treatment Program*

Mr. Sutton also asks this Court to recommend that he be placed in the "Shock Incarceration Program," and that the Court recommend incarceration in a New York or New Jersey prison that has an intensive drug treatment program.

The Shock Incarceration Program is governed by 18 U.S.C. § 4046, which provides:

(a) The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.

(b) For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to—

(1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and

(2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.

(c) An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

As the language of the statute makes clear, the decision whether to include an inmate in the shock incarceration program is the Bureau of Prison's to make. The Court does note, however, that Mr. Sutton faces at least sixty months of incarceration due to the mandatory minimum sentence provisions of 21 U.S.C. §§ 952(a) and 960(a)(1). It would appear, therefore, that he is not eligible for the shock incarceration program, which is available only for defendants sentenced to more than twelve but less than or equal to thirty months.

As for Mr. Sutton's other requests, given Mr. Sutton's history with controlled substances, and the Government's lack of objection, the Court recommends to the Bureau of Prisons that Mr. Sutton receive appropriate drug treatment while incarcerated. The Court further recommends that Mr. Sutton should be incarcerated in a facility near his family in New Jersey.

### F. Downward Departure for Conditions at the Union County Jail

The Court next addresses the Defendant's contention that he is entitled to a downward departure for the conditions at the Union County Jail, where he has been housed since August 4, 1996.

As the Defendant properly notes, whether allegedly deplorable jail conditions during pre-trial confinement warrant a downward departure is the subject of some controversy in this district. Judge Lifland, in *United States v. Navarro*, Crim. No. 93–588–14(JCL), and Judge Debevoise, in *United States v. Insuasti*, Crim. No. 96–73–3(DRD), both granted a downward departure because the Sentencing Commission did not ade-quately take into consideration the possibility of substandard pre-trial confinement when formulating the sentencing guidelines. Judge Debevoise further reasoned that granting a downward departure would have the salutary effect of "emphasizing to government officials the necessity of addressing conditions in the Union County Jail." (Cody Cert. Ex. C, *United States v. Insuasti*, Criminal Judgment).[1]

This Court, in an oral opinion issued in *United States v. Chestnut*, 95 Crim. 201(WGB), held that a downward departure based on substandard conditions was not permissible under the Sentencing Guidelines. The Court, in reaching this conclusion, reasoned that a writ of habeas corpus or a civil action filed pursuant to 42 U.S.C. § 1983 were the more appropriate avenues for addressing the jail's conditions. The Court also noted that, even if it had the power to depart for deplorable conditions, it would not have done so in that case because Mr. Chestnut had not produced sufficient evidence regarding the allegedly poor conditions at the Union County Jail.

The Court now revisits this issue on a more complete record [2] and with the benefit of the Third Circuit's jurisprudence interpreting *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Supreme Court's seminal case regarding a district court's authority to depart under the Sentencing Guidelines.

A sentencing court may depart from the applicable guideline range only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating

---

1. After issuing his Opinion in *Insuasti*, Judge Debevoise toured the Union County Jail. *See* Robert Rudolph, *Jail Tour Changes Judge's Thinking*, Newark Star–Ledger, June 25, 1997. Judge Debevoise, according to newspaper accounts, "saw nothing to suggest [the Union County Jail] is a hell hole," and further stated that "[e]verything seemed to be functioning satisfactorily." *Id.*

2. Mr. Sutton's counsel has produced a copy of a "Technical Assistance Report," dated September, 1996, to document the conditions at the Union County Jail. The Report, which is attached as Exhibit B to Patricia Cody's letter of June 3, 1997 to the Court, was highly critical of the Jail's food service, commissary and recreational facilities. (Report at 35, 40–41). On the other hand, the Report also indicated that the Jail's educational program had improved, (Report at 36), as had its medical services. (Report at 38). As discussed further below, the Report does not contain any information about current conditions at the Union County Jail. Mr. Sutton's counsel has also submitted an affidavit of Mr. Sutton describing in general terms that the conditions of the Union County Jail are "horrible." (Affidavit of Julio Enrique Sutton, dated June 10, 1997).

the [G]uidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).

The universe of potential factors to be considered by a sentencing court in determining whether to depart downward is as wide and varied as human nature itself. *Koon* divides this infinite universe into four categories for purposes of determining whether departure is appropriate pursuant to 18 U.S.C. § 3553(b): (1) forbidden factors [3]; (2) encouraged factors; (3) discouraged factors; and (4) factors that are unmentioned in the Guidelines. *Koon*, —— U.S. at ——, 116 S.Ct. at 2045; *United States v. Haut*, 107 F.3d 213, 218 (3d Cir.1997).

The district court is vested with varying degrees of discretion to depart depending on what type of factor is at issue. In *Koon*, the Supreme Court explained:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." *Koon*, —— U.S. at ——, 116 S.Ct. at 2045 (emphasis added) (citations omitted).

*See also United States v. Haut*, 107 F.3d 213, 218 (3d Cir.1997) (downward departure when district court doubts the veracity of govern-

ment's witnesses is "categorically inappropriate").

"Encouraged factors" offer sentencing courts assistance by setting out a host of considerations that may take a particular case outside the "heartland" of any individual guideline, thereby warranting a departure. *See* U.S.S.G. § 5K2.0 *et seq.; U.S. v. Rivera*, 994 F.2d 942, 948 (1st Cir.1993). "Discouraged factors" are those circumstances enumerated to be "not ordinarily relevant" in determining departures. See U.S.S.G. § 5H1.1 *et seq.; Rivera*, 994 F.2d at 948. Discouraged factors include the defendant's education and vocational skills, family ties and responsibilities, and military, civic or charitable service. *Koon*, —— U.S. at ——, 116 S.Ct. at 2045.

Based on the Court's analysis of *Koon* and the Third Circuit cases that have applied *Koon*, the Court concludes that a sentencing court is not foreclosed as a matter of law from considering the condition of pre-trial confinement as a possible basis for departing downward. Having so concluded, however, the Court declines to depart downward in this case because the evidentiary record submitted in support of the motion fails to persuade the Court that the Defendant's experience was so atypical as to justify the "highly infrequent" exercise of a downward departure based on a factor not mentioned in the Guidelines.

1. *The Court's Authority to Depart Based on Substandard Conditions of Pretrial Confinement*

■ While departures based on grounds not mentioned in the Guidelines will be "highly infrequent," with few exceptions, "departure factors should not be ruled out on a categorical basis." *Koon*, —— U.S. at ——, 116 S.Ct. at 2051. As *Koon* put it, "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no—as it will be most of the

---

**3.** The forbidden factors are: race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol dependence and economic hardship. U.S.S.G. §§ 5H1.10, 5H1.12, 5H1.4 and 5K2.12.

time—the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Koon*, —— U.S. at ——, 116 S.Ct. at 2051.

*Koon* thus carves out a large area where the district court is empowered to depart, but restricts the district court's discretion to depart when the grounds for departure are not mentioned in the guidelines.

The Court first notes that the Guidelines do not specifically prohibit use of this factor in determining whether to depart.

Under Third Circuit law, however, a factor may be categorically proscribed from consideration even though it is not in the list of "forbidden" factors in the Sentencing Guidelines. *See Haut*, 107 F.3d at 219 (dubious veracity of government witnesses categorically proscribed despite not being a "forbidden" factor).[4]

*Haut* is distinguishable from this case. The factor considered in *Haut*, second-guessing a jury's assessment of guilt, by its very nature would, if permissible as a basis for a downward departure, "sap the integrity of both the Guidelines and the jury system." *Haut*, 107 F.3d at 223. Considering the conditions of pre-trial confinement does not pose a similar threat to the jury system or Guidelines.

Therefore, the Court does not find this factor to be within the narrow range of factors that are categorically proscribed from consideration even though they are not explicitly listed as "forbidden" factors by the Sentencing Guidelines.

The Court next notes that a criminal defendant is often placed in pretrial confinement; the Sentencing Commission, therefore, presumably considered the fact of pretrial confinement when formulating the guidelines. Mere pretrial confinement, therefore, is not unusual at all and cannot serve as the basis of a downward departure. *See Koon*, —— U.S. at ——, 116

S.Ct. at 2052 (loss of civic employment after civil rights conviction not unusual and "cannot take this case out of the heartland").

Unusual pretrial confinement, however, in either length or severity of condition, can properly be considered by the sentencing court.

The Court's conclusion follows from the Supreme Court's holding in *Koon* that the "hardship" of successive state and federal prosecutions can serve as a basis for a downward departure. Here, too, the "hardship" of pretrial detention, if sufficiently atypical, could serve as a basis for a downward departure.

The Third Circuit's recent decision in *United States v. Romualdi*, 101 F.3d 971 (3d Cir.1996), also supports the Court's conclusion. In *Romualdi*, the Third Circuit vacated a sentence of home confinement imposed by the district court, because the district court improperly applied U.S.S.G. § 3B1.2 (role in the offense). The defendant had already served nearly six months of home confinement by the time the appeal had been decided. Before remanding the case for resentencing, the Third Circuit noted that "the fact that [the defendant] had already been punished to some extent is certainly relevant to what further sentence is needed to punish her and deter others.... [T]he district court was free to depart." *Id.* at 977.

Although the Court recognizes that pretrial detention is not "punishment" within the constitutional meaning of the word, *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987), even a regulatory measure, such as pretrial detention, can have deterrent and punitive effects. There can be little doubt that pretrial detention in substandard conditions can have a punitive effect not contemplated by the Guidelines. *Cf. Artway v. Attorney General*, 81 F.3d 1235, 1263 (3d Cir.1996) (ostensibly

---

4. The Court notes the tension between *Haut* and dicta from *Koon* that appears to suggest that the list of categorically proscribed factors is coextensive with the factors explicitly forbidden by the Guidelines. *See Koon*, —— U.S. at ——, 116 S.Ct. at 2044 ("... with the exception of [the forbid-

den factors, the Sentencing Commission] does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case").

regulatory measure can have punitive effects). Following both *Romualdi* and *Koon*, the Court concludes that it has the authority to depart based on atypical conditions of pretrial confinement.

### 2. *The Court's Decision Whether to Depart on the Facts of This Case*

The Court next addresses whether the pretrial detention conditions at the Union County Jail are sufficiently atypical to take this case out of the Guidelines' heartland. This inquiry will proceed along two lines: first, the length of the pretrial confinement; and, second, the nature of the pretrial confinement.

It is plain that the Sentencing Commission simply never considered whether substandard pre-trial detention conditions can be the basis for a downward departure.[5] In addressing whether to depart in this case, therefore, the Court bears in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." *Koon*, —— U.S. at ——, 116 S.Ct. at 2045.

■ The introduction to the Guidelines manual makes clear that:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct

significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G., Ch. 1 Pt. A(4)(b) at 5–6.[6]

■ The Court first addresses the length of pretrial confinement on the facts of this case to determine whether Mr. Sutton's case falls outside the "heartland." According to Defendant's submissions, he has been housed in Union County Jail for almost ten (10) months. As Defendant admits, however, this delay is attributable in large part to Defendant himself, who has engaged in plea negotiations and in providing cooperation to the Government. Furthermore, the Defendant has not produced any evidence that this delay is in any way unusual in comparison with the delays experienced by other defendants housed elsewhere. Such evidence might include a comparison of the delays other pretrial detainees experience, for instance. Without such comparative data, it is impossible for the Court to conclude that the delay experienced here was "unusual" so as to transform the Defendant's situation into an atypical case not contemplated by the Guidelines.

Next, the Court addresses whether the conditions of the Defendant's pretrial detainment pose a hardship on the Defendant to such an unusual degree as to warrant a downward departure.

The Defendant has not produced any evidence indicating that the conditions at Union

---

5. *See generally* Kirk D. Houser, *Downward Departures: The Lower Envelope of the Federal Sentencing Guidelines*, 31 DUQ.L.REV. 361, 364 (1993) (explaining that Congress and the Sentencing Commission considered the following factors in formulating the Guidelines: grade of the offense; aggravating or mitigating circumstances of the crime; the nature and degree of the harm caused by the offense; the community view of the gravity of the crime; the public concern generated by the offense; the deterrent effect that a particular sentence may have on others; the current incidence of the offense; defendant's age, education, vocational skills, mitigating or plainly relevant mental and emotional conditions, physical condition (including drug abuse), previous employment record, family ties and responsibilities, community ties; role in the offense, criminal history, and degree of dependence upon criminal activity for a livelihood.) See also U.S.S.G. §§ 5H1.1 *et seq.*, 5K2.0 *et seq.*

6. The "heartland" concept is centered on considerations of the typicality of the defendant's *conduct*, not, as here, matters over which the defendant has no control. Thus, applying the "heartland" concept to whether substandard conditions of pretrial confinement warrant departure is somewhat awkward. The Court recognizes, however, that both the Supreme Court and the Third Circuit have opined that a sentencing court may consider factors similar to those at issue here that do not involve the defendant's conduct. For example, in *Koon* itself, the Supreme Court held that the district court did not abuse its discretion in considering the defendants' susceptibility to abuse in prison and the fact that the defendants were subjected to the "hardship," *Koon*, —— U.S. at ——, 116 S.Ct. at 2053, of successive prosecutions in the state and federal systems.

County Jail are atypical as compared with jails in other jurisdictions. Such evidence, obviously, is critical in determining whether the conditions at Union County Jail deviate from the norm. Furthermore, the Report produced by Mr. Sutton, while being highly critical of the recreational and food facilities at the Union County Jail, also cited improved medical and educational facilities. (Report at 35–41).

In light of the inadequacy of the record, the Court declines to take the "highly infrequent" and extraordinary measure of departing downward based on conditions of pretrial confinement.

As an ancillary matter, the Court writes to urge the Sentencing Commission to address the issue of whether substandard conditions of pretrial detention can ever properly be considered as a basis for downward departure. The Court believes sentencing courts would benefit from a pronouncement from the Sentencing Commission as to whether such conditions should be a "forbidden" factor.

For the reasons set forth below, the Court believes that the Sentencing Commission should make conditions of confinement a forbidden factor in determining whether a court should depart downward. *United States v. Restrepo*, 999 F.2d 640 (2d Cir.1993), held that a downward departure for an unduly long period of detention was unavailable as a matter of law. *Restrepo*, however, was decided before *Koon*. Its holding that a court is categorically excluded from considering such factors does not, in the Court's estimation, survive *Koon*. *Restrepo* nevertheless provides a compelling reason not to introduce conditions of pretrial confinement into the sentencing analysis: there are other mechanisms in the civil law that are designed *specifically* to address the problem of substandard jail conditions. *See id.* at 646 ("any unnecessary delay in the initiation of deportation proceedings for the convicted alien is, at a minimum, contrary to the spirit of the law. Anticipatory 'relief' from a possible delay, however, by way of a downward departure in sentencing is speculative and inappropriate. Remedy for such a delay may be more appropriately be sought either by writ of habeas corpus or by a lawsuit challenging the pertinent policies ..."). Using downward departures to foment prison administrative reform is awkward and far removed from the aim of the Sentencing Guidelines. In particular, allowing consideration of conditions of confinement as a basis for a downward departure would vitiate the Guidelines' goal of uniformity in sentencing. Furthermore, because defendants receive full credit against their term of incarceration for the time they spend in pretrial detention, the discretionary power to depart downward for conditions of pretrial conditions will encourage delay on the part of pretrial detainees. For these reasons, the Court believes sentencing courts should be categorically forbidden to consider the conditions of pretrial confinement as a basis for a downward departure.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that Mr. Sutton's total offense level is 25 and his criminal history category is **II**, making the applicable sentencing guideline range 63–78 months.

**So Ordered.**