**UNITED STATES of America,**

v.

**Renauld BROWN, Defendant.**

**No. CRIM. A. 99–565.**

United States District Court,
E.D. Pennsylvania.

April 27, 2000.

Jennifer J. Chun, U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Paul J. Hetznecker, Hetznecker & Meehan, Philadelphia, PA, for defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

*Background*

On January 31, 2000, the defendant Renauld Brown pled guilty before this court to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and, on April 26, 2000, he was sentenced to seventy months of imprisonment on this charge. The sentencing issues addressed in this memorandum and order were raised by defense counsel via objections to the presentence investigation (PSI), and by the defendant himself in

letters that were filed by Orders of March 27, 2000, and March 31, 2000. The court ruled on these objections and requests from the bench but now writes briefly to supplement those decisions.

*Objections to the Guidelines Calculations in the PSI*

The defendant's first objection to the PSI is that it places him at criminal history category IV and offense level 23, although he contends that he pled to criminal history category III and offense level 24 with a three-level reduction to offense level 21 for acceptance of responsibility. The PSI calculates his guideline range as 70 to 87 months, while the defendant maintains that his original understanding of the plea was for a range of 46 to 57 months.[1]

The defendant's claim to have pled to a specific range is belied by the terms of the plea agreement as well as by the content of the plea colloquy. First, the signed plea agreement explicitly states that the stipulations contained therein are not binding on the court or the Probation Office and that the defendant may not withdraw his plea if the court disagrees with any stipulations. *See* Plea Agmt. ¶¶ 9–10. Before taking the plea, the court informed Mr. Brown that he could receive a sentence up to the maximum permitted by law, which is, in this case, ten years. Also, the plea agreement's stipulations state only that the defendant's base offense level is 24, adjusted by three levels because of acceptance of responsibility. *See* Plea Agmt. ¶ 10(a)-(c). The Probation Office agreed with these stipulations. *See* PSI ¶¶ 20, 26. The portions of the PSI to which defendant actually objects—the criminal history category and the enhancement for reckless flight—were not the subject of any stipulations.

Turning to these issues, the defendant's objections to paragraphs 33 and 34 of the PSI are foreclosed under the guidelines. Paragraph 33 adds two criminal history points because the defendant committed

---

1. Counsel did not raise this issue explicitly at the sentencing hearing.

the present offense while on parole, and paragraph 34 adds another point because the defendant committed the present offense less than two years after his release from custody. Mr. Brown does not contest the accuracy of the facts; instead, he argues that it is unfair for him to receive these points because it is essentially double-counting and because he can be punished for the violation of parole independently. The plain language of the applicable guidelines, however, requires that these points be added. See U.S.S.G. § 4A1.1(d), (e). While it is true that the original offenses themselves count towards the criminal history category, the additional points reflect the belief that there is increased culpability and risk of recidivism by individuals who commit crimes shortly after release from a previous term of imprisonment or who commit new crimes while under supervision for a previous crime. See id. app. note 6. The two enhancements are intended to address two different types of risk and culpability: Mr. Brown's conduct implicates both concerns, and he correctly received a total of three additional criminal history points.

■ In the same vein, the defendant contends that the burglary of a house should not be considered a crime of violence if it was not occupied at the time of the crime.[2] As all parties agree, the Sentencing Guidelines include burglary of a dwelling as a crime of violence with no qualifications. See U.S.S.G. § 4B1.2 app. note 1 (cross-referenced by U.S.S.G. § 2K2.1 app. note 5). While the defendant suggests that the language of the guidelines does not foreclose his interpretation, the Third Circuit has already addressed that precise contention and rejected it. See United States v. McClenton, 53 F.3d 584, 587–88 (3d Cir.1995); see also United States v. McQuilkin, 97 F.3d 723, 728 (3d Cir.1996) (reiterating McClenton holding).

This controlling precedent means that paragraph 30 is correct, and the defendant's base offense level is appropriately placed at level 24, as he has two prior felony convictions of either a crime of violence or a controlled substances offense. See PSI ¶ 20; U.S.S.G. § 2K2.1(a)(2).

■ The defendant also objects to paragraph 24, which enhances the base offense level by two levels for creating a substantial risk of serious injury or death by fleeing from the arresting officers. See U.S.S.G. § 3C1.2. The defendant agrees that he fled from Philadelphia Police Officers who were approaching his vehicle after noticing that the car had the wrong tags. See PSI ¶ 9. The PSI further states, "Philadelphia Police pursued the car for a considerable distance in a residential neighborhood of the City until such time that they were directed to cease chasing it. However, the officers were able to see the Gold Infiniti collide with a brick retaining wall[.]" Id. ¶ 10. The defendant argues that there is no evidence that anyone was actually at risk and stresses that the officers did not give him a ticket. However, the testimony at the sentencing hearing presented by Officer Rollins, one of the officers pursuing Mr. Brown, established that the defendant made an abrupt U-turn in an intersection when he realized that they wanted him to stop. Subsequently, he drove in a highly erratic manner in a residential neighborhood, making several sudden stops so that the police officers were forced to pull-back because of their fear that they would hit the defendant. Officer Rollins' undisputed testimony also established that the defendant was driving between ten and twenty-five miles above the posted speed limit and that the defendant only stopped when his vehicle ran into a wall. The court concludes that instigating the car chase in these circumstances created a substantial risk of injury

---

2. While the court understands defense counsel to have applied this argument to calculation of the criminal history, were the court to accept defendant's position, it would actually

have the effect of reducing the base offense level, as the applicable guideline looks in part to prior offenses in establishing the offense level. See U.S.S.G. 2K2.1(a).

and that the enhancement was properly applied, even without evidence that the police officers ticketed the defendant.

*The Requests for Downward Departures*[3]

 The defendant first requests a downward departure on the basis of the prison conditions he has experienced. While the court believes that it has discretion to depart on this ground in appropriate circumstances, *see, e.g., United States v. Sutton,* 973 F.Supp. 488, 491–95 (D.N.J. 1997), aff'd. without opinion, 156 F.3d 1226 (3rd Cir.1998), the defendant has not presented a sufficient factual predicate for a departure. The defendant's letters primarily recount crowding, poor food, noise, and an inadequate legal library. The court does not intend to minimize the discomforts these conditions may have created, but, without more specific information, the court cannot conclude either that the length of time Mr. Brown spent in the various jails or the nature of the conditions were so extraordinarily bad as to warrant a lesser sentence.

The defendant also suggests that he warrants a departure for his efforts to cooperate. The government has not, however, filed a motion for a departure for substantial assistance pursuant to U.S.S.G. § 5K1.1, and at the time of the plea, the government explicitly stated that no cooperation deal was contemplated. The court also concludes that the defendant's efforts, on the present record, were not so noteworthy as to warrant a departure for extraordinary acceptance of responsibility. *See United States v. Evans,* 49 F.3d 109, 114–15 (3d Cir.1995); *United States v. Lieberman,* 971 F.2d 989, 996 (3d Cir.1992).

*The Request for a Concurrent Sentence*

 As noted, the defendant committed the instant offense while on parole. According to the PSI, supervision on that case was set to expire on April 29, 2002. *See* PSI ¶ 31. However, the Pennsylvania State Parole Board has already made a

finding that the defendant's conduct and conviction in this case constitute a direct violation. The Board has postponed imposition of penalty pending sentencing in this case.

In the letters he submitted to the court, the defendant requested that his sentence in federal court be ordered concurrent to any state sentence that may be imposed. The court understands the defendant to have withdrawn this argument at the hearing. However, even assuming *arguendo* that the court could impose a concurrent sentence, it would not do so. Possession of a firearm by a felon is a serious offense, particularly given Mr. Brown's admission that he knew he could not possess a firearm and his efforts to escape the arresting officers. While the court expresses no opinion on what, if any, sentence should be imposed by the state, it will not recommend a concurrent sentence.

*Conclusion*

The PSI properly calculates the defendant's sentence, and the court declines to grant a downward departure or to impose a concurrent sentence. However, as explained at the sentencing hearing, a term of imprisonment at the bottom of the guideline range is appropriate.

3. These requests were not raised at the sentencing hearing.