

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2003

# USA v. Valletto

Precedential or Non-Precedential: Non-Precedential

Docket 02-1933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Valletto" (2003). *2003 Decisions.* Paper 808.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/808

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1933

UNITED STATES OF AMERICA

v.

ANTHONY VALLETTO,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 98-cr-00008-3)
District Judge: Honorable Joseph E. Irenas

Submitted Under Third Circuit LAR 34.1(a)
January 24, 2003

Before: NYGAARD, AMBRO and LOURIE*, Circuit Judges

(Opinion filed February 12, 2003)

OPINION

_____

* Honorable Alan D. Lourie, United States Circuit Judge for the Federal Circuit, sitting by
designation.

AMBRO, <u>Circuit Judge</u>

On May 25, 1999, a jury found Anthony Valletto guilty of conspiracy to distribute and to possess with intent to distribute more than 100 grams of methamphetamine, a violation of 21 U.S.C. § 846. After prevailing on a <u>habeas corpus</u> claim based on his attorney's failure to file a direct appeal despite Valletto's request that he do so, Valletto appeals his conviction. We affirm.

## I. FACTS

In December 1996, Kalani Lopa, a cooperating government witness, initiated communication with Eugene Bernardo, president of the local chapter of the Breed Motorcycle Club, to request assistance reentering the methamphetamine distribution business. Bernardo told Lopa to speak with Carl Chianese, and gave Lopa a telephone number. It was Valletto's telephone number, as Chianese was staying with Valletto. On January 4, 1997, Chianese met Lopa at a bar and took him to a gray station wagon, which Valletto was driving, to show Lopa the methamphetamine inside the car under a blanket. On January 10, Chianese met Lopa in a parking lot, again in the gray station wagon with Valletto driving, and Lopa purchased one pound of methamphetamine. Valletto then drove Chianese to a bar where Chianese gave Lopa money to give to Bernardo. DEA agents observed Valletto engaging in what they termed counter-surveillance: driving around the area, allegedly to ensure that no undercover agents or police officers were in the vicinity. On March 10, Lopa and Chianese met, Chianese gave Lopa a sample and they discussed future drug transactions.

On March 16, 1997, Valletto visited Lopa at his home and advised him that Chianese and

2

another man who had been involved in the prior drug transaction, Angelo Belardo (known as "Cappi"), had been arrested in Allentown, Pennsylvania. Valletto admitted to Lopa that he had transported the drugs to Allentown, had given the drugs to Chianese and Cappi at a rest stop, and then had followed them to the restaurant where the transaction had taken place. Valletto told Lopa that he was going to attempt personally to handle the drug transactions that Chianese and Lopa had discussed conducting. Thereafter, Valletto was arrested on December 8, 1997.

## II. PROCEDURAL HISTORY

On January 6, 1998, a federal grand jury returned an indictment charging Bernardo, Chianese and Valletto. Chianese entered a guilty plea; Bernardo and Valletto went to trial. The trial began on May 18, 1999. Lopa testified for the Government, and was subject to extensive cross-examination about, inter alia, his criminal history and drug use. To rebut the attacks on Lopa's credibility, the Government offered the testimony of Case Agent Richard Grosfelt. Grosfelt testified that he had used Lopa as an informant in other cases.[1] As Grosfelt testified, he attempted on several occasions to explain the basis for his opinion in the form of specific instances of conduct. On each occasion, the

---

[1]The relevant testimony was as follows:

> Q: In fact, since 1996 when Mr. Lopa first began to cooperate, has the [DEA] and the [ATF] used Mr. Lopa as a cooperating witness in cases that you have handled?
> A: Yes, that is true, sir.
> Q: Can you estimate for the jury approximately how many cases?
> A: Mr. Lopa was involved in approximately six or seven cases.
> Q: Now, based on your close or the working relationship you have had with Mr. Lopa since he began to cooperate, have you formed an opinion as to his character for truthfulness?
> A: Yes, I have.

3

District Court stopped his testimony and instructed him to give only his opinion.[2]  At the close of the

Government's case, the District Court reserved and later denied the defense motion for a judgment of

acquittal.  The jury returned a verdict of guilty against both defendants.

On September 16, 1999, the District Court held a sentencing hearing.  It concluded that

Valletto was entitled to a two-point reduction for having occupied a minor role in the conspiracy.  The

District Court found, however, that Valletto was not entitled to a reduction for being a minimal

participant in the conspiracy because he had driven the other conspirators in his car, housed Chianese,

engaged in counter-surveillance, and had initiated communications and offered to continue dealing drugs

after Chianese's arrest.  Valletto's Guidelines range provided for a sentence of 51-63 months, and the

---

[2]The relevant testimony is as follows:

> Q: Special Agent Grosfelt, once again based on your working relationship with Mr. Lopa since he began to cooperate in November of 1996, have you formed an opinion as to his character for truthfulness?
> A: Yes, I have formed my own opinion.
> Q: What is your opinion as a special agent of the Drug Enforcement Administration?
> A: My opinion of Mr. Lopa's truthfulness during this investigation basically that any information that he has told us has either been cooperated [sic] through –
> Mr. Browstein: Objection.  Just opinion evidence.
> The Court: Just opinion.
> Mr. Klingeman: What is your opinion of his character for truthfulness during the period of this investigation?
> A: During the period of this investigation, my opinion is that any information that Mr. Lopa has –
> The Court: No, give your opinion of his truthfulness.
> The Witness: He is a truthful individual, and the information he has given us has been corroborated or –
> The Court: Hold it.  Come on, you were asked your opinion, stop the answer at that point.

4

District Court settled on 51 months.

### III. DISCUSSION

Valletto argues on appeal that the District Court erred in three ways. He contends that the District Court erred at trial by allowing the Government to introduce extrinsic evidence of specific instances of conduct to support Lopa's credibility and character of truthfulness, and by denying the defense motion for judgment of acquittal due to insufficiency of the evidence. Finally, he claims that the District Court erred at sentencing by denying Valletto a downward departure for his role as a minimal participant. We find no error on any of these contentions and affirm the District Court.

#### A. Introduction of Specific Instances of Conduct

Valletto argues that Agent Grosfelt's testimony constituted extrinsic evidence of specific instances supporting Lopa's credibility, in violation of Fed. R. Evid. 608(b). Under Fed. R. Evid. 608(a), opinion or reputation evidence of truthful character is admissible after the character of the witness for truthfulness has been attacked. Extrinsic evidence of specific instances of a witness's conduct, however, may not be introduced for the purpose of attacking or supporting that witness's credibility. Fed. R. Evid. 608(b). Valletto concedes that Lopa's reputation for truthfulness was attacked during a vigorous cross-examination by his counsel and that Agent Grosfeld was therefore entitled to give his opinion of Lopa's credibility. Valletto claims that Agent Grosfelt's testimony constituted extrinsic evidence of specific instances of conduct to support Lopa's credibility, and was therefore introduced in violation of Fed. R. Evid. 608(b).

We find no violation of the Rules of Evidence. The Government asked Agent Grosfelt to testify about his opinion of Lopa's credibility, not to testify about specific instances of conduct. While it is true

5

that Agent Grosfelt did attempt to include in his answers examples of specific instances of conduct, on each occasion he was prevented from doing so, either by defense counsel or by the Court.

Valletto's reliance on United States v. Murray, 103 F.3d 310 (3d Cir. 1997), is misplaced.  In Murray, the witness was permitted by the District Court to testify that the informant had "'made' [provided evidence that ultimately resulted in an arrest] 'in excess of 65' cases and [that the Government] had obtained 'numerous' search warrants as a result of [the informant's] services."  103 F.3d at 315.  In contrast, Agent Grosfelt was prevented from so testifying.  The fact that Grosfelt was permitted to testify that Lopa had been a cooperating witness in six or seven other cases does not violate Fed. R. Evid. 608(b).  As the Murray Court points out, testimony that the informant had been used on prior occasions "was necessary to establish that [the witness] had a basis on which to offer his opinion as to [the informant's] character for truthfulness."  Id. at 322.  Where the line was crossed, the Murray Court noted, was when the witness testified that the informant had 'made' several cases, as that "was more specific than can be justified as necessary to establish a foundation."  Id.   That line was not crossed in this case, and Fed. R. Evid. 608(b) was not violated.[3]

> B.     Motion for Judgment of Acquittal

---

[3]Any possible effect on the jury that Agent Grosfelt's half-finished sentences may have had was rendered harmless by the jury instructions given by the District Court in this case. See Murray, 103 F.3d at 322 n.8 (noting that error can be rendered harmless if District Court gives appropriate curative instructions (citing United States v. Piva, 870 F.2d 753, 760-61 & n.9 (1st Cir. 1989)); see also United States v. Saada, 212 F.3d 210, 222 (3d Cir. 2000) (finding error harmless when District Court admitted evidence to "counteract[] the effects" of error).  The District Court, like the District Court in Piva, instructed the jury that they were free to accept or reject Lopa's testimony in whole or in part, and to consider his motives to lie, thereby counteracting the effects of Agent Grosfelt's half-finished sentences.

6

Valletto argues that it was error for the District Court to deny the defense motion for judgment of acquittal because there was insufficient evidence that he was a knowing participant in the conspiracy. When assessing a claim that the evidence was insufficient to support the verdict, our review is highly deferential. United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001). We review the sufficiency of the evidence in the light most favorable to the Government, and credit all reasonable inferences that would support the verdict. United States v. Perez, 280 F.3d 318, 342 (3d Cir. 2002). We will sustain the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.

Valletto argues that there was insufficient evidence to show beyond a reasonable doubt that he knowingly and willfully became a member of the conspiracy.[4] To sustain a conviction of conspiracy, there must be evidence "tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment." United States v. Idowu, 157 F.3d 265, 268 (3d Cir. 1998).

We affirm the District Court's denial of Valletto's motion. The Government provided evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that Valletto entered into an agreement and knew that the agreement was to distribute (and to possess with intent to distribute) methamphetamine. The Government provided evidence that Valletto had methamphetamine

---

[4]We presume that this is the underlying legal basis for Valletto's argument that his conviction was based on "mere suspicion" of guilt by association, citing to United States v. Vasquez-Chan, 978 F.2d 546, 550 (9th Cir. 1992) (reversing a conviction because "defendant's mere proximity to the drug, [her] presence on the property where it is located, and her association with the person who controls it are insufficient to support a conviction for possession.").

in his car on several occasions, drove Chianese to meetings where the sale of drugs either was discussed or executed, performed counter-surveillance, admitted to Lopa to having transported methamphetamine to Pennsylvania for Chianese to sell, and initiated communications with Lopa to continue the sale of methamphetamine after Chianese's arrest. See United States v. Iafelice, 978 F.2d 92, 97 (3d Cir. 1992) (finding sufficient evidence to support conviction for possession of heroin with intent to distribute from, inter alia, defendant's counter-surveillance, which showed knowledge of criminal activity, and from the fact that the drugs were in the car that defendant owned and operated, which showed constructive possession of drugs). We conclude that there was sufficient evidence for a reasonable jury to conclude that Valletto knowingly and willfully participated in the conspiracy.

C.    Denial of Sentencing Level Decrease for Minimal Participation

Valletto argues that the District Court erred during sentencing by denying his request for a four-level decrease for minimal participation in criminal activity.[5] Because the denial was based on the District Court's factual determination that the defendant was not a minimal participant, we review the decision for clear error. See United States v. Price, 13 F.3d 711, 735 (3d Cir. 1994). Under the clearly erroneous standard, "a finding of fact may be reversed on appeal only if it is completely devoid of a credible evidentiary basis or bears no relationship to the supporting data." United States v. Haut, 107 F.3d 213, 217 (3d Cir. 1997) (citing American Home Prod. Corp. v. Barr Labs, Inc., 834 F.2d

_____

[5]The District Court did grant a two-point reduction based on its finding that Valletto was a minor participant in the conspiracy. The Sentencing Guidelines applicable at the time Valletto was sentenced authorized a two-point reduction for those who were minor participants, a four-point reduction for those who were minimal participants, and a three-point reduction for those whose participation fell somewhere between minor and minimal. U.S.S.G. §3B1.2.

368, 370-71 (3d Cir. 1987)).  We find no clear error.

The four-level decrease Valletto requested "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group."  U.S.S.G. § 3B1.2(a).  "The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."  Id., Application Note 1.

Valletto contends that the District Court failed to consider the fact that "other than transporting Chianese, [he] had no further involvement or meaningful role in the underlying conspiracy."  The District Court did not clearly err by finding that Valletto was not a minimal participant.  A district court must consider "the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise" when determining whether an adjustment under U.S.S.G. § 3B.1.2 is warranted.  United States v. Headley, 923 F.2d 1079, 1084 (3d Cir.1991) (citation omitted).  The District Court properly considered all of the relevant facts and arrived at the conclusion that while Valletto was a minor participant, his participation went beyond that of a minimal participant because of the extent of his awareness of the nature and scope of the conspiracy.

We cannot say that this conclusion was error.  The Sentencing Commission has noted that an example of a minimal participant is someone "who played no other role in a very large drug smuggling operation than to offload a part of a single marijuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs."  U.S.S.G. § 3B1.2, Application Note 2.  Valletto's participation in, and knowledge of the extent and scope of, this conspiracy went beyond what would be acquired from one night of offloading drugs or one instance of

9

acting as a drug mule. He participated on a continuing basis, if in a peripheral way, by driving Chianese to meetings (on at least one occasion with a pound of methamphetamine in his car), conducting counter-surveillance, transporting drugs and accompanying Chianese to a drug transaction in Pennsylvania, and visiting Lopa on his own accord to discuss possible future transactions. Given this evidence of Valletto's knowledge of and participation in all aspects of the conspiracy, the District Court did not commit clear error by concluding that Valletto was not a minimal participant.

## IV. CONCLUSION

Valletto's claims of error are unpersuasive. The District Court did not allow the Government to introduce extrinsic evidence to support the credibility of their witness, Lopa. There was sufficient evidence for the jury to conclude that Valletto was a knowing participant in the conspiracy to distribute methamphetamine. Finally, the factual determination of the District Court that Valletto was not a minimal participant in the conspiracy was not clear error. We affirm.

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/ Thomas L. Ambro
Circuit Judge